UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BENJAMIN ELLIOTT,                                        CIVIL NO. 15-1908 (JNE/JSM)

      Plaintiff,

v.                                                       <u>REPORT AND RECOMMENDATION</u>

DENESE WILSON, Warden, et al.,

      Defendants.


JANIE S. MAYERON, United States Magistrate Judge

The above matter came before the Court upon plaintiff's Motion for Preliminary Injunction/Protective Order [Docket No. 9] and plaintiff's Motion for Summary Judgment and Emergency Request for Immediate Injunction [Docket No. 48].  The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.     FACTUAL BACKGROUND

Plaintiff Benjamin Elliott is currently an inmate at FCI-Coleman, a low-security prison located in Sumterville, Florida.  Notice of Change of Address [Docket No. 54].[1] On April 8, 2015, while incarcerated at FCI-Sandstone, plaintiff filed a motion for a preliminary injunction and protective order [Docket No. 1], which he withdrew by letter on April 13, 2015 [Docket No. 5].   On April 29, 2015, plaintiff refiled his motion for preliminary injunction and protective order, in which he alleged the following facts as to numerous employees of FCI-Sandstone:

---

[1]    <u>See</u> <u>also</u> Federal Bureau of Prisons, <u>Find an inmate</u>, https://www.bop.gov/inmateloc/ (last visited December 8, 2015).

On October 7, 2014, plaintiff arrived at FCI-Sandstone to begin the Residential Drug Treatment Program ("RDTP"). Plaintiff's Motion for Preliminary Injunction/Protective Order, p. 2 [Docket No. 9]. On November 21, 2014, defendants removed plaintiff from the RDTP, and plaintiff sought relief through the administrative remedies process and by filing suit under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Id., pp. 2-3.

As plaintiff progressed in exhausting his administrative remedies, defendants increased their efforts to frustrate or impede the process. Id. Plaintiff alleged that every time he prepared legal papers for filing, defendants would seize his legal work or place him in isolation, during which time his papers would mysteriously disappear. Id. Plaintiff alleged that between March 27, 2015 and April 7, 2015, defendants stole or discarded over $500 worth of his personal property, denied his requests for access to his legal work and to the law library, denied his requests for legal copies (even though he had the funds to pay for them, and prison policy clearly stated that staff shall make legal copies at the inmate's expense), and denied his requests for access to a typewriter or word processor to prepare legal documents. Id., pp. 5-6.

Plaintiff requested that this Court issue an order requiring defendants (1) to provide plaintiff access to his legal materials and legal documents, (2) to provide plaintiff access to FCI-Sandstone's law library for a period of not less than two hours per day, (3) to provide access at all times to a word processor or NEO AlphaSmart, (4) to refrain from further harassment or retaliation towards plaintiff, and (5) to cease their efforts to manipulate plaintiff's custody classification score to improperly raise his security level. Id., pp. 8-9, 14-15.

On May 20, 2015, plaintiff filed a Complaint against defendants, alleging violations of the Administrative Procedures Act, Section 504 of the Rehabilitation Act, and his rights under the First, Fifth, Sixth, and Eighth and Fourteenth Amendments to the United States Constitution. See Docket No. 13. The Summons and Complaint were served on the various defendants between July 29, 2015 and September 3, 2015. See Docket Nos. 33-41. The United States Attorney, Andrew Luger, was served on August 24, 2015. See Docket No. 40.

On September 3, 2015, defendants filed a motion for extension of time to respond to plaintiff's Complaint and his motion for preliminary injunction. See Docket No. 43. The Court granted defendant's motion on October 1, 2015, and ordered that defendants file their responses on or before December 4, 2015. See Docket No. 47.

On October 13, 2015, plaintiff filed an emergency request for immediate injunction and for summary judgment. With respect to summary judgment, plaintiff alleged that he had served defendants with a copy of the Complaint on July 29, 2015, but defendants failed to respond within 60 days, as required by Rule 4 of the Federal Rules of Civil Procedure. Motion for Summary Judgment and Emergency Request for Immediate Injunction, p. 1-2 [Docket No. 48].

As for the request for immediate injunction, plaintiff alleged that on August 12, 2015, defendants wrongfully and maliciously transferred him to FCI-Beaumont Medium, "one of the most violent prisons in the Federal Bureau of Prisons," even though his security classification score had gone down from 9 to 8. Id., p. 2. According to plaintiff, he arrived at FCI-Beaumont Medium on August 26, 2015, and was assaulted by three

gang members on the morning of August 27, 2015. <u>Id.</u>, pp. 2-3. Plaintiff was thereafter housed in administrative detention awaiting transfer to another facility. <u>Id.</u>, p. 3.

For relief, plaintiff requested that the Court grant summary judgment in this case and issue an emergency injunction ordering the BOP to transfer him to a low-security prison immediately. <u>Id.</u>, pp. 3-4.

On December 2, 2015, defendants filed another motion for extension of time to respond to plaintiff's Complaint and motions for preliminary injunction. <u>See</u> Docket No. 49. The Court has granted defendants' motion and directed defendants to respond to the Complaint on or before January 29, 2016. <u>See</u> Docket No. 56.

## II.   DISCUSSION

### A.   <u>Motions for Preliminary Injunction</u>

"When evaluating whether to issue a preliminary injunction,[2] a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest." <u>Roudachevski v. All-American Care Centers, Inc.</u>, 648 F.3d 701, 705 (8th Cir. 2011) (citing <u>Dataphase Sys., Inc. v. C L Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or

---

[2]   Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order. <u>See</u> <u>S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project</u>, 877 F.2d 707, 708 (8th Cir.1989) (affirming the district court's application of the <u>Dataphase</u> factors to a motion for a temporary restraining order); <u>Jackson v. Nat'l Football League</u>, 802 F. Supp. 226, 229 (D. Minn. 1992) (concluding that the <u>Dataphase</u> factors apply to requests for temporary restraining orders and preliminary injunctions) (citations omitted).

away from granting a preliminary injunction." West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987) (citation omitted). Such injunctive relief is an extraordinary remedy and the movant has the burden of establishing the propriety of an injunction. See Roudachevski, 648 F.3d at 705 (citing Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003)). The burden is especially heavy where, as in this case, the moving party seeks not to maintain the status quo, but to obtain relief similar to that which it could obtain after a trial on the merits. See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993) (citation omitted).

Before reaching the merits of plaintiff's motions for preliminary injunctive relief, the Court must determine whether the motions should be denied as moot.

"'In order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution.'" Republican Party of Minn., Third Cong. Dist. v. Klobuchar, 381 F.3d 785, 789-90 (8th Cir. 2004) (quoting Iron Cloud v. Sullivan, 984 F.2d 241, 242 (8th Cir. 1993)); see also Ringo v. Lombardi, 677 F.3d 793, 796 (8th Cir. 2012) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy.") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Ringo v. Lombardi, 677 F.3d 793, 796 (8th Cir. 2012) (quoting Preiser, 422 U.S. at 401); Gilbert v. Nix, 990 F.3d 1044, 1046 (8th Cir. 1993) (same).

"'When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or change in circumstances ... and a federal court

can no longer grant effective relief, the case is considered moot' and cannot be heard by a court." <u>Life Investors Ins. Co. of Am. v. Fed. City Region, Inc.</u>, 687 F.3d 1117, 1121 (8th Cir. 2012) (quoting <u>Ali v. Cangemi</u>, 419 F.3d 722, 723 (8th Cir. 2005)); <u>see also</u> <u>Ringo</u>, 677 F.3d at 796 ("When a case . . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it.") (quoting <u>Neighborhood Transp. Network, Inc. v. Pena</u>, 42 F.3d 1169, 1172 (8th Cir. 1994).

In this case, plaintiff has requested that this Court issue an order requiring staff at FCI-Sandstone to provide access to his legal materials and legal documents, to provide access to the law library and a word processor, to refrain from retaliating against plaintiff for pursuing administrative and judicial relief, and to cease their efforts to transfer plaintiff to a higher-security facility.   However, by plaintiff's own admission, in August, 2015, he was transferred out of FCI-Sandstone, and a recent search of the BOP's offender database revealed that plaintiff is now housed at FCI-Coleman, a low-security facility in Sumterville, Florida.  Because of this change in circumstances, any ongoing violations of plaintiff's rights by staff at FCI-Sandstone have been terminated.  Further, the relief plaintiff is seeking in his emergency motion for preliminary injunction—a transfer to a low-security prison—has already occurred.  Consequently, this Court can no longer grant any effective relief to plaintiff, and his motions for preliminary injunction should be denied as moot.

## B.     <u>Motion for Summary Judgment</u>

In support of his motion for summary judgment, plaintiff argued that defendants failed to respond to his Complaint within 60 days of its filing and made no effort to contact him in any way.

As an initial matter, given the substance of his argument, the Court believes that plaintiff's motion for summary judgment should be construed as a motion for default judgment under Federal Rule of Civil Procedure 55(b).[3]   The Court also notes that plaintiff is <u>pro se</u>, and therefore, the Court liberally construes the instant motion.  <u>Cf. Ellis v. City of Minneapolis</u>, 518 F. App'x 502, 504 (8th Cir. 2013) (holding that courts must liberally construe <u>pro se</u> complaints).

Under Rule 12 of the Federal Rules of Civil Procedure, a United States officer must serve an answer to a complaint within 60 days after service on the United States Attorney.  Fed. R. Civ. P. 12(a)(2), (3).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  The plaintiff must then apply to the Court for a default judgment, and the Court may conduct a hearing to determine the amount of damages, consider evidence, or investigate other matters.  Fed. R. Civ. P. 55(b)(2).

In this case, although plaintiff filed his Complaint on May 20, 2015, he did not serve the United States Attorney for the District of Minnesota, Andrew Luger, until August 24, 2015.  <u>See</u> Process Receipt and Return [Docket No. 40].  Thus, under Rule

---

[3]   In any event, at this early stage of litigation, no discovery has taken place and defendants have not yet answered plaintiff's Complaint.  Thus, a motion for summary judgment would be premature at this time.

12(a), defendants were not required to answer the Complaint until October 23, 2015. On October 1, 2015, the Court issued an Order extending the time for defendants to respond to the Complaint until December 4, 2015.   And on December 2, 2015, defendants filed a motion for an additional extension of time until January 29, 2016 to respond to the Complaint, which the Court has granted.

In short, there is no basis upon which this Court could grant plaintiff's motion for default judgment.   Defendants have fully complied with the Federal Rules of Civil Procedure with respect to filing deadlines and have timely brought motions to extend the time to respond, which this Court granted.   Accordingly, plaintiff's motion for default judgment, or for summary judgment, should be denied.

## III.    RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that

1.      Plaintiff's Motion for Preliminary Injunction/Protective Order [Docket No. 9] be **DENIED as moot**;

2.      Plaintiff's Emergency Request for Immediate Injunction [Docket No. 48] be **DENIED as moot**; and

3.      Plaintiff's Motion for Summary Judgment [Docket No. 48] be **DENIED**.


Dated:        December 8, 2015

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

8

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 22, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.