# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Benjamin Elliott,

Case No. 0:15-cv-01908-JNE-KMM

Plaintiff,

**REPORT AND
RECOMMENDATION**

v.

Denese Wilson, *Warden*;
Matthew Marske, *Associate Warden*;
Tony Lee, *Captain*;
William Earl, *Retired SIS Lieutenant*;
Michael Weber, *SIS Technician*;
Mark Burns, *SIS Technician*;
Dr. Ann LaValley-Wood, *Chief Psychologist*;
Dr. Kari Maynard, *Former Drug Abuse
Prevention Coordinator*;
Steve Denzine, *Drug Treatment Specialist*;
Dixie Dahl, *Drug Treatment Specialist*;
Rykki Gignon, *Drug Treatment Specialist*;
Terry Greenfield, *Drug Treatment
Specialist*;
Keith Krzoska, *Drug Treatment Specialist*;
Joe Jarvis, *Unit Manager*;
John Isaacson, *Unit Counselor*;
Steven Dracy, *Correctional Officer*;
Cathy Thompson, *Psychology Treatment
Program Coordinator*;
Nicole Fedo, *Case Manager*;
Deborah Jensen, *Systems Officer*; and
10 Unknown Federal Bureau of Prisons
Employees,
*all in both their individual and official
capacities*,

Defendants.

---

1

---

Benjamin Elliott, plaintiff pro se

Gregory G. Brooker, United States Attorney's Office, counsel for defendants

---

Plaintiff Benjamin Elliott is a federal prisoner who formerly was incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). Elliott alleges over the course of a 62-page amended complaint that his constitutional rights were violated on dozens of occasions by FCI-Sandstone officials. He also alleges that he was wrongfully removed from and improperly denied re-entry to the Bureau of Prison's Residential Drug Abuse Program ("RDAP"), the successful completion of which would have made Elliott eligible for a reduction in sentence of up to one year. *See* 18 U.S.C. § 3621(e)(2)(B).

This matter is before the Court on defendants' motion to dismiss or, in the alternative, motion for summary judgment. *See* ECF No. 150. The motion has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 72 of the Federal Rules of Civil Procedure. After review, this Court recommends that defendants' motion be granted with respect to all but one of Elliott's claims.

## I.    The Amended Complaint

For purposes of defendants' motion to dismiss, this Court accepts the factual allegations pleaded in the amended complaint as true and draws all reasonable

inferences in Elliott's favor. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). A summary of Mr. Elliott's many allegations follows.

Elliott was transferred to FCI-Sandstone on October 7, 2014. *See* Am. Compl. ¶ 12 [ECF No. 148]. Two days after his arrival, defendant John Isaacson, a unit counselor at FCI-Sandstone, threatened Elliott repeatedly. Isaacson told him that "he would not be receiving any legal phone calls or legal visits" while at FCI-Sandstone, that Isaacson "had done his homework on [Elliott] and knew that he liked to file administrative remedies," and that if Elliott continued to file administrative remedies, he would not be permitted to complete RDAP. Am. Compl. ¶ 13. Isaacson then introduced Elliott to the drug-treatment specialists at FCI-Sandstone, including defendants Dr. Kari Maynard, Dixie Dahl, Steve Denzine, Rykki Gignon, Terry Greenfield, and Keith Krzoska. *Id.* Isaacson and the drug-treatment specialists questioned Elliott about the credentials of his attorney and the purpose behind an upcoming legal visit. *Id.* The defendants also warned Elliott to hide his homosexuality so as not to be interpreted by prisoners as "advertising himself to engage in sexual acts with others." *Id.* The day ended with Elliott meeting defendant William Earl, a Special Investigative Services ("SIS") lieutenant at FCI-Sandstone, who also warned Elliott that he would be transferred to a more restrictive housing unit or another prison if he filed grievances. *Id.*

About a week later, Elliott requested a legal storage box from Isaacson and defendant Joe Jarvis, a unit manager at FCI-Sandstone. *See* Am. Compl. ¶ 14. That

same day, an unidentified officer inspected Elliott's cell for contraband in retaliation for the request for a legal storage box.  *Id.*  Another non-defendant officer told Elliott that he "must have made the wrong person mad because I have never seen anyone treated like that before."  *Id.*  Elliott's request for a legal storage box was denied.  *See* Am. Compl. ¶ 19.

On October 18, 2014, Elliott was ordered to report to Isaacson's office.  *See* Am. Compl. ¶ 17.  There, Isaacson and defendant Michael Weber, an SIS technician, threatened Elliott with administrative detention for having contacted a former inmate in violation of prison policy.  *Id.*  Isaacson also told Elliott that "he spent hours digging in [Elliott's] records and that he will do all in his power to have [Elliott] thrown out of the RDAP program."  *Id.*  Elliott received disciplinary incident reports both for contacting the former inmate and for sending funds to a different prisoner. *Id.*

Throughout this period, Elliott presented complaints about mistreatment to members of the drug-treatment team at FCI-Sandstone.  For example, on October 17, 2014, ten days after his arrival, Elliott told Maynard that he was having trouble managing his mental-health issues due to harassment by staff and other inmates, and that the curtailment of prescription medication he had previously been taking for anxiety was making matters worse.  *See* Am. Compl. ¶ 16.  About a week later, Elliott again protested about bigotry and homophobia in the unit; he was told by the

treatment team that the "issues are his own fault and that he should use humility to deal with it better." Am. Compl. ¶ 20.

The harassment of Elliott by FCI-Sandstone officials continued. On October 25, 2014, Isaacson and Weber impounded food and other commissary items in Elliott's possession following allegations that he had received them in exchange for performing sexual acts with other inmates. Am. Compl. ¶ 22. The officers mocked Elliott's homosexuality while conducting the search, remarking that "I see you like to gobble sausages" and "I see you like tasting the rainbow" in response to Elliott's possession of summer sausages and Skittles candy. *Id.* A short time later, Maynard interviewed each of the inmates at FCI-Sandstone to determine whether they had been propositioned by Elliott for sexual activity; no one responded that they had. Am. Compl. ¶ 26. Harassment by other prisoners towards Elliott continued as well, encouraged by prison officials, who protected certain inmates at the expense of others. Am. Compl. ¶ 29.

On October 30, 2014, Isaacson, Dahl, Denzine, Gignon, Greenfield, Krzoska, and one non-defendant prison official, acting at the behest of Maynard, conducted yet another search of Elliott's cell. Am. Compl. ¶¶ 25, 122. The search uncovered photographs with homosexual content that were deemed pornographic, along with legal papers belonging to other inmates. *Id.* All of these items were seized as contraband, and Elliott was given an incident report for possession of the items; the incident report was later expunged. *Id.*

Around this time, Elliott was notified that he qualified for RDAP and would be eligible to receive a year off his term of imprisonment for completion of the program. *See* Am. Compl. ¶ 23. The RDAP experience was largely a disaster for Elliott. FCI-Sandstone staff required Elliott to complete "responsibility checks" that involved standing "in front of one hundred inmates while staff encourage[d] other inmates to berate or criticize his every action." Am. Compl. ¶ 24; *accord* Am. Compl. ¶ 30. Elliott's complaints about this mistreatment were ignored by the drug-treatment team. *See* Am. Compl. ¶ 31. In fact, Elliott says, he was singled out for "disruptive behavior" by the RDAP team and removed from RDAP by Maynard on November 21, 2014. *See* Am. Compl. ¶ 34.

Elliott met with Maynard to address what he believed to be differences between the way RDAP staff treated inmates they favored and those they didn't. *See* Am. Compl. ¶ 40. Maynard promised to readmit Elliott into the next session of RDAP, although she later declined to repeat this promise in front of her supervisor, defendant Dr. Ann LaValley-Wood. Am. Compl. ¶ 43, 44.

Despite Maynard's assurances, Elliott was not readmitted to RDAP. *See* Am. Compl. ¶ 53. He was given several reasons for the decision not to allow him back into the program, including that he first needed to complete the BOP's Non-Residential Drug Program and go on a mood stabilizer. *Id.* LaValley-Wood also told Elliott in March 2015 that she had been listening to his phone calls and reading his emails, and that "she would not want to work with anyone who might sue her." Am.

6

Compl. ¶ 57.  Defendant Denese Wilson, then the warden at FCI-Sandstone, refused to override the decision of Maynard and LaValley-Wood not to readmit Elliott to RDAP.  *See* Am. Compl. ¶ 56.

Other retaliation and harassment by FCI-Sandstone officials continued as well. Elliott alleges that his prison job was negatively changed by defendant Matthew Marske, associate warden at FCI-Sandstone, in response to a request that Elliott be given a "release of information form" to provide to his attorney.  Am. Compl. ¶ 58. And Weber informed Elliott that if he did not stop filing grievances, he would be sent to the special housing unit and placed in administrative detention—a threat that prison officials followed through with in March and April 2015.[1]  *See* Am. Compl. ¶ 61.  During his time in administrative detention, Elliott's property and medication were destroyed and his legal mail was confiscated.  *Id.*

On April 2, 2015, Elliott was removed from his cell in administrative detention, placed in handcuffs, and brought to meet with Earl.  *See* Am. Compl. ¶ 63.  During this meeting, which lasted for two hours, Elliott remained in handcuffs "so tight that they were cutting off his circulation," with his hands behind his back rather than in front of his body.  *Id.*  At the meeting, Earl and Weber openly conspired to

---

[1]     Elliott alleges that his transfer to administrative detention occurred on March 27, 2014, see Am. Compl. ¶ 61, but he did not arrive at FCI-Sandstone until October 2014, see Am. Compl. ¶ 12.  Most likely, the year listed in the amended complaint is simply a misprint.

manipulate Elliott's custody-classification score through the filing of false incident reports in order to have Elliott transferred to a more secure and more violent prison. *Id.* Five incident reports were soon filed against Elliott by Weber (all later expunged), with Weber telling Elliott that he would be transferred to a prison "where guys like him would get their head beat in." Am. Compl. ¶ 64.

Another meeting between Elliott, Weber, and Earl was held the following day. *Id.* Again, Elliot was placed in tightly-drawn handcuffs behind his back. *Id.* Earl and Weber also once again threatened Elliott with a transfer to a more violent prison. After the meeting, Elliott informed defendant Steven Dracy, a correctional officer at FCI-Sandstone, that he was drafting a motion for an injunction to be filed in federal court in order to prevent these abuses. *See* Am. Compl. ¶ 64. Dracy confiscated Elliott's legal pad and the motion for an injunction, and Elliott was denied further access to legal materials. *Id.* Another defendant, case manager Nicole Fedo, told an individual working at FCI-Sandstone not to make legal copies for Elliott. Am. Compl. ¶ 67.

FCI-Sandstone officers filed several more incident reports against Elliott between May and July 2015, each of which Elliott alleges were false, and most of which were later expunged. Am. Compl. ¶¶ 70-77. Because of these disciplinary infractions, Elliott was transferred on August 12, 2015 from the low-security FCI-Sandstone to the medium-security Federal Correctional Institution, Beaumont, "one of the most violent prisons in the country." Am. Compl. ¶ 78. Not long after his

arrival, Elliott was assaulted by three inmates.  *See* Am. Compl. ¶ 81.  An investigation

revealed that Elliott should not have been transferred to a medium-security facility,

and Elliott was soon moved, this time to the low-security Federal Correctional

Institution, Coleman.  *See* Am. Compl. ¶ 82.

Based on those allegations (and other allegations omitted here for the sake of

brevity), Elliott brings seven causes of action in his amended complaint:

- In Count One, Elliott alleges that his First Amendment rights were violated through, among other things, retaliation by prison officials for filing administrative grievances and denial of access to the courts.  *See* Am. Compl. ¶¶ 83-102.

- In Count Two, Elliott alleges that his Fifth and Sixth Amendment rights were violated through, among other things, his removal from RDAP without due process and for discriminatory reasons, and the denial of access to legal materials during his time in the special housing unit.  *See* Am. Compl. ¶¶ 103-09.

- In Count Three, Elliott alleges that his Eighth Amendment rights were violated through, among other things, the destruction of prescribed medication, sexual harassment by prison staff, and the use of excessive force during the meetings at which Elliott was tightly handcuffed.  *See* Am. Compl. ¶¶ 110-18.

- In Count Four, Elliott alleges that his Fourteenth Amendment[2] equal-protection rights were violated through, among other things, the removal of pictures with homosexual content when prisoners were permitted to retain similar pictures bearing heterosexual content, the singling out for

---

[2]    Although brought as a Fourteenth Amendment claim, this claim is more appropriately raised by Elliott under the equal-protection component of the Fifth Amendment's due-process clause.  *See United States v. Wynde*, 579 F.2d 1088, 1092 (8th Cir. 1978) (indicating federal inmates properly bring equal protection claims under the Fifth Amendment's due process clause).  However, the difference is not important for purposes of this analysis.

excessive searches, and the sexual harassment by prisoner staff.  *See* Am. Compl. ¶¶ 119-24.

- In Count Five, Elliott alleges that he was removed from RDAP on account of a disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.  *See* Am. Compl. ¶¶ 125-32.

- In Count Six, Elliott alleges that his removal from RDAP was arbitrary and capricious and therefore violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq.  *See* Am. Compl. ¶¶ 133-38.

- In Count Seven, Elliott alleges that the removal from RDAP and sexual harassment by officers at FCI-Sandstone violates the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).  *See* Am. Compl. ¶¶ 139-45.

Although Elliott explicitly enumerates only seven counts, most encompass multiple claims for relief.  For instance, Count One alone encompasses nearly three dozen separate claims for relief, all premised on violations of Elliott's First Amendment rights by FCI-Sandstone officers and employees.  For organizational purposes, the Court will refer to the claims covered by counts one through four as "conditions of confinement" claims.  Elliott seeks monetary relief, a declaration that the incidents alleged in the amended complaint violated his rights, and "injunctive relief . . . commanding the defendants to credit Plaintiff the one year off his sentence that he would have been credited for completing the RDAP program . . . ."  Am. Compl. at 61.

## II.    Defendants' Motion

The defendants seek dismissal of all of Mr. Elliott's claims, raising numerous arguments in support of their motion.  Among other things, the defendants claim that sovereign immunity precludes many claims, that he has failed to exhaust required

administrative remedies as to many other claims, and that still others are inadequately

pled. Although the Court recommends that the defendants' motion be granted in

most respects, one of his claims should survive.

###   A.      Sovereign Immunity and Mootness

Elliott sues each of the nineteen remaining named defendants in both their

individual capacities and their official capacities as employees and officers of the

BOP.[3] Defendants maintain that the federal government has not waived its sovereign

immunity with respect to the official-capacity claims brought by Elliott and that those

claims should therefore be dismissed. Because "[s]overeign immunity is jurisdictional

in nature," this Court will therefore address this argument first. *FDIC v. Meyer*, 510

WS 471, 475 (1994).

A suit against an employee of an agency of the federal government in his or her

official capacity amounts to a suit against the federal agency itself. *See, e.g.*, *Buford v.

Runyon*, 160 F.3d 1199, 1201 n.3 (8th Cir. 1998) (citing *Kentucky v. Graham*, 473

U.S. 159, 166 (1985)). "Absent a waiver, sovereign immunity shields the Federal

Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

The federal government can waive its sovereign immunity by statute. Elliott suggests

---

[3]      Elliott asserts in his briefing that he "makes no official capacity claims against
the Defendants," Pl.'s Mem. in Opp'n, at 12 [ECF No. 89], but the amended
complaint clearly seeks relief from the defendants "in both their individual and official
capacities," Am. Compl. at 2.

that, insofar as he seeks monetary compensation from the United States government, the FTCA provides such a waiver of sovereign immunity for each of the official-capacity claims raised in this action.   Certainly, the FTCA provides a limited waiver of sovereign immunity with respect to tort claims brought against the United States government.   *See* 28 U.S.C. § 2674.   Constitutional tort claims, however, are not actionable under the FTCA.[4]   *See Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 873 (8th Cir. 1999); *Russ v. United States*, 62 F.3d 201, 204 (7th Cir. 1995).   Because the FTCA's waiver of sovereign immunity extends only to claims properly brought under that act, *see* 28 U.S.C. § 2674, the FTCA cannot provide the necessary waiver of sovereign immunity for Elliott to proceed with his constitutional claims against defendants in their official-capacities.[5]

The APA also provides a limited waiver of the federal government's sovereign immunity:

---

[4]    Elliott also brings a claim directly under the FTCA.   *See* Am. Compl. ¶¶ 139-45. In large part, this is simply a repeat of his constitutional claims which cannot be maintained under the FTCA.   To the extent that Elliott attempts to bring state-law tort claims that fall within the scope of the FTCA, those claims are inadequately pleaded, as discussed below.

[5]    Sovereign immunity does not prevent Elliott from seeking monetary damages from the defendants in their *individual* capacities for his constitutional claims.   *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). But "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."   *Buford*, 160 F.3d at 1203.   Put another way, Elliott cannot prosecute a claim under *Bivens* against defendants in their official capacities.

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:  Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

5 U.S.C. § 702.  This waiver of sovereign immunity applies not only to claims brought directly under the APA, but to claims for non-monetary relief of constitutional violations by federal officials as well.  *See, e.g.,* *Raz v. Lee*, 343 F.3d 936, 938 (8th Cir. 2003) (per curiam) (citing, *inter alia*, *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524-25 (9th Cir. 1989)); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005).

The APA's waiver of sovereign immunity is of limited help to Elliott for two reasons.  First, the waiver expressly applies only insofar as a litigant seeks "relief other than money damages . . . ."  5 U.S.C. § 702.  Elliott cannot seek monetary relief from defendants in their official capacities by virtue of the APA.  Second, Elliott was transferred from FCI-Sandstone during the pendency of this action and currently resides at a different facility.  A prisoner's claims for declaratory and injunctive relief based upon the conditions at a particular facility become moot when the prisoner is transferred to another facility and is no longer subject to those conditions.  *See, e.g.,*

*Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (citing *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)).  The vast majority of Elliott's claims relate to conditions specific to FCI-Sandstone.  His requests for prospective, non-monetary relief based on those conditions became moot upon his transfer from that facility.  This mootness deprives the Court of jurisdiction over those requests for declaratory and injunctive relief, regardless of whether sovereign immunity has been waived with respect to those claims.  *See, e.g., Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013).[6]

Because most of the amended complaint pertains to conditions specific to FCI-Sandstone, Elliott's requests for injunctive relief based on those conditions-of-confinement claims are now moot.  One claim, however—that Elliott has wrongfully been denied readmission to RDAP and the subsequent reduction in sentence that a

---

[6]     There are exceptions to the mootness doctrine, but none applies to Elliott's claims.  One exception merits brief discussion:  "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Service Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012).  "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC*, 133 S. Ct. at 727.  That said, "[t]he likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy." *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985).  There is no basis from the documents submitted in this matter to conclude that the prospect of Elliott being transferred back to FCI-Sandstone is anything other than remote and speculative.

completion of RDAP permits—extends beyond the conditions at FCI-Sandstone,[7] as Elliott could potentially be readmitted to RDAP (or be given time off his sentence) at any BOP facility.  Because Elliott could still receive effective injunctive relief based on that claim, the request for injunctive relief is not necessarily moot due to Elliott's transfer.  *See Randolph v. Rodgers*, 170 F.3d 850, 856-57 (8th Cir. 1999).  Accordingly, this Court concludes that the APA provides the necessary waiver of sovereign immunity with respect to Elliott's request for readmission to RDAP, as brought against defendants in their official capacities, and that the claim was not made moot by Elliott's transfer to a different facility.

One final, related question is whether, in seeking readmission to RDAP or a reduction in sentence from defendants in their official capacities, Elliott has sought injunctive relief from the correct party?  None of the individuals named as defendants to this action have any connection to Elliott's *continuing* exclusion from RDAP, as Elliott no longer resides at FCI-Sandstone.  But an action for prospective relief against a defendant sued in his official capacity as a federal officer or employee is treated as a suit against the United States itself.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688-89 (1949); *see also, e.g., Taylor v. Rice*, No. 10-cv-4746-

---

[7]    Elliott's claim of retaliatory transfer to a more restrictive facility (where he was assaulted) relates only to the misconduct specific to employees of FCI-Sandstone.  He does not, for example, bring a failure-to-protect claim against the individuals at the institution where he was transferred.

SRN-JJG, 2012 WL 246014, at *8 (D. Minn. Jan. 6, 2012).  What matters is not

whether the specific defendants sued by Elliott may effectively provide relief

regarding RDAP, but whether the United States government can grant such relief to

Elliott.  Because some officer of the United States could achieve the appropriate

relief, this Court concludes that Elliott's official-capacity claims with respect to RDAP

are therefore brought against an appropriate party.

Moreover, the specific injunctive relief sought by Elliott is a reduction in

sentence commensurate with the reduction he would have received had he completed

RDAP.  This is relief in the nature of habeas corpus.  *See Kruger v. Erickson*, 77

F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (indicating that a writ of habeas corpus is

the proper remedy to a challenge to the length of a prisoner's detention).  Elliott was

detained at FCI-Sandstone when this action commenced.  Wilson, the warden of FCI-

Sandstone, would have been the appropriate respondent to a habeas action, which is

"an official capacity proceeding against the individual who holds a petitioner in

custody."  *Ball v. Nebraska Dep't of Corrections*, No. 4:07-cv-3224, 2008 WL 4104679,

at *2 (D. Neb. Aug. 29, 2008); *accord Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)

(noting that "in habeas challenges to present physical confinement . . . the default rule

is that the proper respondent is the warden of the facility where the prisoner is being

held.").  And a request for habeas corpus relief is not mooted upon the transfer of a

prisoner if there was jurisdiction at the time of filing.  *See, e.g., Gianni v. Fed. Bureau of

Prisons*, No. 09-cv-1166-MJR-JSM, 2010 WL 1427318, at *5 n.6 (D. Minn. Feb. 12,

2010) ("It has long been established that once a court acquires jurisdiction with the initial filing of a habeas corpus petition against a petitioner's immediate custodian, the subsequent transfer of the petitioner and accompanying change in custody does not divest the court of that jurisdiction.").

Along with the specific request for time off his sentence, Elliott requests any "other just and equitable relief" deemed appropriate by the Court. Am. Compl. at 61. Such equitable relief might include an order that Elliott be readmitted to RDAP, so that he might become eligible for a reduction in sentence. Similar requests have been treated as requests for habeas corpus relief, perhaps because completion of RDAP allows a prisoner to be eligible for a reduction in sentence. *See Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011); *Cheatam v. Nickrenz*, No. 15-cv-1210-PAM-FLN, 2015 WL 9312479, at *1 (D. Minn. Nov. 19, 2015). Again, an action against the warden of FCI-Sandstone in her official capacity would be the proper means of seeking such relief.[8] And even if the prospective relief sought by Elliot were not regarded as a

---

[8]     Courts generally decline to grant habeas corpus relief when such is relief is sought in a traditional civil-rights lawsuit rather than a petition for a writ of habeas corpus. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006) (distinguishing between habeas relief and relief under § 1983); *Spencer v. Haynes*, 774 F.3d 467, 470-71 (8th Cir. 2014). For purposes of this recommendation, it suffices to note that although the Court has jurisdiction over Elliott's claims that he is entitled to a reduction in sentence or readmission to RDAP (which are essentially requests for habeas corpus relief), Elliott has not stated a viable claim entitling him to such relief, for reasons explained later. Therefore, the Court need not address the impact of his decision to seek habeas-type relief in a civil rights lawsuit.

remedy sounding in habeas corpus, any injunction against defendants in their official capacities would operate as to the United States government itself, which could direct the appropriate officer to provide Elliot with the appropriate relief.

For these reasons, this Court retains jurisdiction over Elliott's claims for prospective, non-monetary relief against defendants in their official capacities relating to RDAP. The remainder of Elliott's official-capacity claims, however, must be dismissed without prejudice for lack of jurisdiction.

### B.   Exhaustion of Administrative Remedies

The defendants argue that Elliott has failed to exhaust administrative remedies with respect to most of his claims, and therefore those claims must be dismissed. The record regarding exhaustion in this case is complex, and a searching review is required. The Court concludes that Elliott failed to exhaust available remedies for many, but not all of his claims.[9]

---

[9]   "In addressing a motion to dismiss, we may look to the pleadings, documents attached to the pleadings, 'materials embraced by the pleadings . . . and matters of public record.'" *Hageman v. Barton*, 817 F.3d 611, 620 n.8 (8th Cir. 2016) (quoting *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). The Eighth Circuit has permitted district courts, in addressing an argument that a prisoner has not exhausted administrative remedies, to examine the underlying administrative documents filed by the parties as part of consideration of a motion to dismiss under Rule 12(b)(6). *See, e.g., Haley v. Galloway*, 92 Fed. App'x 379, 380 (8th Cir. 2004) (per curiam); *but see Fargas v. United States*, 334 Fed. App'x 40, 40-41 (8th Cir. 2009) (per curiam) (regarding motion to dismiss for failure to exhaust administrative remedies as properly converted to motion for summary judgment). Even if consideration of the underlying record with respect to exhaustion converts defendants' motion into one for summary judgment, the exhaustion argument was first presented in the memorandum

(*footnote continued on next page*)

### 1.   Conditions-of-Confinement Claims

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that prisoners exhaust "'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)).  The exhaustion requirement, once invoked as an affirmative defense, is mandatory; a district court may not excuse a prisoner's failure to exhaust available administrative remedies.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  Section 1997e(a) requires, however, that administrative remedies be "available" in order for the exhaustion requirement to apply.  An administrative procedure is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.  Similarly, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, administrative remedies are considered unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

---

supporting defendants' motion to dismiss Elliott's initial complaint.  *See* ECF No. 59. Elliott had a full opportunity to submit evidence showing that he has in fact exhausted administrative remedies, an opportunity of which he has availed himself. *See* ECF Nos. 90-125.

The BOP has established a four-step administrative-review process for prisoner conditions-of-confinement claims. *See* 28 C.F.R. §§ 542.10-542.19. The prisoner must first attempt to informally resolve the issue with prison staff; the procedures for informal resolution vary by institution. *See* 28 C.F.R. § 542.13(a). If attempts at informal resolution fail, a prisoner may then submit a formal administrative remedy request to the staff member designated to receive such requests. *See* 28 C.F.R. § 542.14. If the prisoner is not satisfied with the response to that request, he may appeal the decision to the appropriate regional director. *See* 28 C.F.R. § 542.15(a). Finally, if the prisoner remains dissatisfied after receiving the regional director's decision, he may appeal that decision to the BOP Central Office. *Id.*

An alternative, abbreviated administrative-review process has been established where "the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution . . . ." 28 C.F.R. § 542.14(d)(1). A prisoner with a sensitive request may bypass review at the institution level and submit his request directly to the regional director. *Id.* If the regional director finds that the request is not sensitive, the inmate will be informed of that decision and permitted to re-submit the request at the institutional level under the usual procedure. *Id.*

Elliott filed eleven[10] requests for administrative remedies during his incarceration at FCI-Sandstone.  *See* Bush Decl. ¶¶ 18-39 [ECF No. 153].  Nine of them can be analyzed quickly, either because they were not fully exhausted or they are not relevant to issues raised in his complaint.

(1-3) On or about December 15, 2014, Elliott submitted Administrative Remedy Nos. 804685-R1, 804686-R1, and 804687-R1 alleging staff misconduct.  *See* Bush Decl. ¶ 18.  Elliott believed the complaints to be sensitive and initiated these administrative remedies at the regional level, rather than at the institutional level.  *Id.* Each of the administrative remedies was rejected for not raising a sensitive issue, and Elliott acknowledges that he did not renew these requests at the institutional level (although he argues that the claims raised in those remedies were raised again in a subsequent properly exhausted administrative remedy).  *See* Pl.'s Mem. in Opp'n, at 3-4.

(4) On or about January 5, 2015, Elliott submitted Administrative Remedy No. 806426-F1 at the institutional level.  *See* Bush Decl. ¶ 22.  This administrative remedy was rejected as untimely, and Elliott did not appeal that finding.  *Id.* Elliott acknowledges that he did not fully exhaust the matter and asserts that this particular

---

[10]    In a declaration provided to the Court, BOP legal assistant Jake Bush attests that Elliott filed twelve administrative remedies during his incarceration at FCI-Sandstone.  *See* Bush Decl. ¶ 17 [ECF No. 153].  This Court has examined the record and has found only eleven administrative remedy series filed by Elliott at FCI-Sandstone.

administrative remedy is irrelevant to the claims raised in the amended complaint. Pl.'s Mem. in Opp'n, at 4.

(5) On or about February 5, 2015, Elliott submitted Administrative Remedy No. 809564-F1 at the institutional level concerning issues with his personal property. *See* Bush Decl. ¶ 28.  The administrative remedy was rejected for failure to first attempt informal resolution, and Elliott did not pursue the matter further.  *Id.* ¶¶ 28-29.  Elliott "does not dispute that Administrative Remedy Series 809564-F1 was rejected and that he did not continue to file to the next level."  Pl.'s Mem. in Opp'n, at 5.

(6) On or about June 4, 2015, Elliott submitted Administrative Remedy No. 823467-F1 at the institutional level challenging an incident report for having been found with "food service biscuits" under his bed.  Bush Decl. ¶ 30; Bush Decl. Ex. E [ECF No. 153-5].  Elliott appealed the matter to the appropriate regional director, but not to the BOP Central Office.  *See* Bush Decl. ¶ 31.  Although the incident is mentioned briefly in the amended complaint, none of Elliott's claims are based on these events, and he confirms in his briefing that he did not fully exhaust this administrative remedy.  *See* Pl.'s Mem. in Opp'n, at 5.

(7) On or about July 20, 2015, Elliott submitted Administrative Remedy No. 828908-R1 at the regional level as a sensitive remedy.  *See* Bush Decl. ¶ 36.  The administrative remedy was procedurally rejected as not sensitive, and Elliott did not

renew the request at the institutional level.  *Id.* ¶¶ 36-37.  Elliott confirms that this administrative remedy was not exhausted.  *See* Pl.'s Mem. in Opp'n, at 5.

(8) On or about July 30, 2015, Elliott submitted Administrative Remedy No. 830983-R1 at the regional level as a sensitive remedy.  *See* Bush Decl. ¶ 38.  The administrative remedy was procedurally rejected as not sensitive, and Elliott did not take the matter up again at the institutional level.  *Id.* ¶¶ 38-39.  Elliott confirms that this administrative remedy was not exhausted.  Pl.'s Mem. in Opp'n, at 5.

(9) On or about June 25, 2015, Elliott submitted Administrative Remedy No. 826630-F1 at the institutional level seeking to expunge an incident report for possession of pornographic materials.  *See* Bush Decl. ¶ 34.  (This administrative remedy relates to a different incident than the one involving homosexual photographs discussed below.)  Elliott did not appeal this matter to the BOP Central Office and therefore did not fully exhaust this administrative remedy.  *See* Bush Decl. ¶¶ 34-35; Bush Decl. Ex. H [ECF No. 153-8].

The two remaining administrative remedies filed by Elliott require more extended discussion:

(10) On or about January 5, 2015, Elliott submitted Administrative Remedy No. 806239-R1 appealing an incident report relating to the removal of both pictures bearing homosexual content and other inmates' legal materials from his cell.  *See* Bush. Decl. ¶ 20.  The request was initially denied as untimely, but a follow-up grievance, Administrative Remedy No. 806239-R2, was accepted by the regional office.  *See*

Bush. Decl. ¶ 21.  In the regional office's response, Elliott was told that "the pictures and documents you received the incident report for were returned to you and were not deemed as contraband."  Bush Decl. Ex. D at 2 [ECF No. 153-4].  The incident report resulting from the incident was expunged.  *Id.*  As he had succeeded in getting the incident report expunged by the regional office and the pictures and documents had been returned to him, Elliot did not appeal the matter further to the BOP Central Office.

Elliott now brings two claims under *Bivens* relating to the events at issue in this administrative remedy.  First, Elliott alleges that Jarvis violated his First Amendment rights by finding him guilty of possessing contraband—a charge that was expunged by the regional office.  *See* Am. Compl. ¶ 88.  Second, Elliott alleges that the removal of the pictures and subsequent disciplinary proceedings were discriminatory, as similarly situated inmates with pornographic materials were not punished.[11]  *See* Am. Compl. ¶¶ 120, 122.

It is unclear whether the second of these claims was exhausted in this particular administrative remedy series.  The defendants offered as evidence the appeal of the denial for untimeliness, but not the initial request itself.  *See* Bush Decl. Ex. D at 2.  Although Elliott challenged the propriety of the removal of the photographs and

---

[11]    Elliott does not claim in this lawsuit that the removal of the pictures and legal documents *itself* violated his First Amendment rights.  See Am. Compl. ¶¶ 83-102.

documents, it is unknown whether he argued in the original administrative remedy that the removal was the product of differential treatment among prisoners by FCI-Sandstone officers. *See* Bush Decl. Ex. D at 2.[12]  Unless he gave the BOP the opportunity to address the issue of differential treatment in Administrative Remedy Series 806239, that administrative remedy cannot serve as a basis for exhaustion of the issue. *See, e.g.*, *Butala v. Gerlicher*, No. 13-cv-0633-PJS-TNL, 2014 WL 241865, at *6 (D. Minn. Jan. 22, 2014).  But the defendants bear the burden of establishing that Mr. Elliott failed to exhaust administrative remedies on this issue. *See Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).  However, as discussed below, the issue of differential treatment was also raised in a different and fully exhausted administrative remedy series, so the Court need not decide whether it was adequately exhausted in this series as well.

It also appears that the first of these claims—Jarvis's alleged misconduct in affirming an incident report based on the removal of non-pornographic materials—was properly exhausted through Administrative Remedy Series 806239.  Certainly, Elliott did not appeal the claim to the BOP Central Office, but there would have been little reason for him to do so; Jarvis's failure to expunge the incident report was

---

[12]     This exhibit — Elliott's appeal to the regional office regarding the incident report resulting from the discovery of the photographs and legal documents at issue — is close to illegible, although the portions that this Court has been able to decipher do not include a complaint about differential treatment.

nullified by the regional office's decision to do so, and there was nothing left to appeal in that regard. Several circuits—although not yet, so far as this Court can tell, the Eighth Circuit—have concluded that "a prisoner need not press on to exhaust further levels of review once he has . . . received all 'available' remedies at an intermediate level of review . . . ." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (collecting cases). If this is true, then the claim that Jarvis committed misconduct in affirming the incident report has been fully exhausted, even insofar as Elliott seeks monetary damages from Jarvis (a remedy that was not sought and could not be sought through the administrative remedy process).

This Court need not resolve whether Elliott has fully exhausted the claim against Jarvis in Administrative Remedy No. 806239-R1. Although district courts must determine whether a prisoner has exhausted administrative remedies before proceeding to summary judgment, *see Benjamin v. Ward County*, 632 Fed. App'x 301, 301 (8th Cir. 2016) (per curiam), a court may dismiss an action for failure to state a claim on which relief may be granted regardless of whether the claims raised in that action are unexhausted; *see Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015); *Vong v. Loftness*, No. 06-cv-4596-JMR-AJB, 2008 WL 2690293, at *7 (D. Minn. June 30, 2008). Even if Elliott exhausted his claim against Jarvis, he has not stated a claim on which relief may be granted. The denial of a prisoner's grievances, without more, does not amount to a violation of the prisoner's constitutional rights. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2012) (per curiam) (citing *Buckley v. Barlow*, 997 F.2d 494, 495

(8th Cir. 1993)). With respect to the removal of the items at issue in the administrative remedy, Jarvis is alleged in the amended complaint to have done nothing except "[find] him guilty of the incident report." Am. Compl. ¶ 88. This finding may have been a mistake, but is not, in and of itself, a constitutional violation. In short, any claims that Elliott might have exhausted through Administrative Remedy No. 806239-R1 regarding Jarvis are not viable and should therefore be dismissed for failure to state a claim.

(11) On or about January 16, 2015, Elliott submitted Administrative Remedy No. 807563-F1 at the institutional level. *See* Bush Decl. ¶ 25. The remedy was coded by the BOP as a request for reconsideration of Elliott's dismissal from RDAP, *see* Bush Decl. Ex. C. at 46 [ECF No. 153-3], but Elliott actually raised several claims in this remedy, including that he had been deprived of medicine, that FCI-Sandstone officers encouraged abuse from prisoners and questioned the credentials of his attorney, and that his equal-protection rights were violated after he was disciplined for possessing photographs similar to those possessed by other, similarly situated prisoners who had not been punished. *See* Pl. Ex 1 at 11-12 [ECF No. 90]. The administrative remedy was initially denied both as untimely and because Elliott had informally resolved the problem. *See* Bush. Decl. ¶ 25. Elliott appealed that decision to the regional director, arguing that the finding of untimeliness was based on a misreading of the underlying documents. *See* Pl. Ex 1 at 5. The regional office seemingly agreed that the grievance was timely, but nevertheless rejected the appeal

because Elliott had "informally resolved this issue." *Id.* at 4; *accord* Bush Decl. ¶ 26.

Elliott then appealed to the BOP Central Office, which "concur[red] with [the]

rationale of [the] regional office and/or institution for rejection" and told Elliott to

"follow directions provided on prior rejection notices." Pl. Ex. 1 at 2; *accord* Bush

Decl. ¶ 27.  Defendants argue that the claims raised in this administrative remedy

series have not been exhausted because Elliott's grievance was rejected procedurally

by the BOP Central Office as having already been informally resolved.

The BOP's disposition of this administrative remedy series was peculiar.

Presumably, had the issues raised by Elliott truly been informally resolved, he would

not have persisted in filing appeals all the way to the final stage of administrative

review for his conditions-of-confinement claims.  The BOP also erroneously treated

Elliott as having raised only one issue for grievance in remedy 807563, when in fact he

had raised several.[13]  *See* Pl. Ex. 1 at 11-12.  Each of these other claims seems to have

been ignored at every stage of appeal.

---

[13]    Under § 542.14(c)(2), an "inmate shall place a single complaint or a reasonable
number of closely related issues on the form.  If the inmate includes on a single form
multiple unrelated issues, the submission shall be rejected and returned without
response, and the inmate shall be advised to use a separate form for each unrelated
issue."  However, the BOP did not reject Elliott's administrative remedy on the basis
that it raised more than one claim for relief.  Elliott's attempt to raise several claims in
one remedy cannot now be cited as grounds for non-exhaustion.  *Cf. Hammett v.
Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (noting that "the PLRA's exhaustion
requirement is satisfied if prison officials decide a procedurally flawed grievance on
the merits.").

It appears that the BOP misapplied its own procedural rules in denying Elliott's administrative remedy.  Section 1997e(a) requires that prisoners exhaust available administrative remedies, but an administrative remedy cannot be said to be available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross*, 136 S. Ct. at 1860.  Among the ways that prison administrators may thwart an inmate from taking advantage of a grievance process is through misapplication of their own procedural rules in refusing to offer a decision on the merits of a prisoner's grievance.  *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153-55 (3d Cir. 2016); *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001).

Defendants argue that administrative remedies were available to Elliott for these claims because, rather than continue appealing the finding of informal resolution up the administrative-review ladder, Elliott could instead have filed a *new* administrative remedy raising the same claims.  *See* Defs.' Mem. in Supp. at 22 [ECF No. 151].  But this statement is not followed by citation and does not find ready support in the regulations.  Indeed, a new administrative remedy filed by Elliott raising the same issues may have been untimely.  *See* 28 C.F.R. § 542.14(b).  On the evidence presented to this Court, the BOP has not established that Elliott had any further avenue for recourse on the claims raised in remedy 807563.

The burden of proving failure to exhaust falls on the defendants. *See Foulk*, 262 F.3d at 697. In most respects, the defendants have met that burden with respect to Mr. Elliott's myriad claims challenging the conditions of his confinement and his treatment at FCI–Sandstone. However, the defendants have not met their burden in proving that he failed to exhaust available remedies with respect to the conditions-of-confinement claims raised in remedy 807563. Thus, after consideration of whether Elliott has exhausted his FTCA and Rehabilitation Act claims, this Court will consider whether Elliott has stated a claim on which relief may be granted with respect to any of the claims in the amended complaint that were also raised in Administrative Remedy Series 807563.

### 2. FTCA Claim

Count Seven of the amended complaint raises claims pursuant to the FTCA. The FTCA imposes an exhaustion requirement separate from that found in § 1997e(a). *See* 28 U.S.C. § 2675(a); *Muldrow v. Bureau of Prisons*, No. 2:15-cv-203-JLH-JTK, 2016 WL 3023830, at *2 (E.D. Ark. May 5, 2016). The FTCA's exhaustion requirement, unlike the PLRA's exhaustion requirement, is a "jurisdictional prerequisite to filing suit." *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987); *accord Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) ("Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant.").

Elliott argues that he "filed a tort claim regarding this matter" and that the administrative claim was denied on February 19, 2015.  Am. Compl. ¶¶ 10, 50. Among the exhibits filed by Elliott is a claim presented pursuant to the FTCA on December 27, 2014 alleging that he had been the "Victim of Cruel and Unusual Punishment" and "Numerous Constitutional Violations" and had "Suffered Emotional Distress and grief" as a result.  *See* Pl. Ex. Z [ECF No. 117].  An attachment to that claim confirms that Elliott sought damages for what he believed to be violations of his constitutional rights, including removal from RDAP, differential treatment among prisoners by staff at FCI-Sandstone, and many of the other claims found in the amended complaint.  *See id.* at 2-5.  Elliott appears to have satisfied the FTCA's exhaustion prerequisites, a fact the defendants do not dispute.

The problem for Elliott, however, is that the constitutional claims he exhausted pursuant to the FTCA are not *actionable* under the FTCA.  *See Washington*, 183 F.3d at 873.  "The FTCA makes the United States liable to the same extent as a private person would be according to the law of the place where the act occurred.  Because 'law of the place' refers to state law, and state law cannot provide liability for the violation of a federal constitutional right, constitutional wrongs cannot be remedied through the FTCA."  *Russ*, 62 F.3d at 204 (quoting 28 U.S.C. § 1346(b)) (citations omitted).  Each of the claims presented by Elliott was framed expressly as a claim for violations of his federal constitutional rights, *see* Pl. Ex. Z, and these cannot be raised through the FTCA.  Even if the allegations set forth in his complaint could be

31

somehow construed as state law tort claims, the BOP was not put on notice that

Elliott might also be raising such assertions under the FTCA, so he cannot bring such

claims against the United States now.  28 U.S.C. § 2675(a)  Accordingly, it is

recommended that Elliott's FTCA cause of action (Count Seven) be dismissed

without prejudice.[14]  *See Hayes v. Federal Bureau of Prisons*, No. 12-cv-0577-PJS-FLN,

2014 WL 1017954, at *3 (D. Minn. Mar. 17, 2014) (noting that "a finding that an

FTCA claim is precluded by a failure to exhaust administrative remedies [is a finding]

that a court lacks jurisdiction over the FTCA claim—and a dismissal for lack of

jurisdiction is properly without prejudice.").

### 3.    Rehabilitation Act Claim

In Count Five of the amended complaint, Elliott alleges that he was removed

from RDAP in violation of the Rehabilitation Act of 1973.  Claims raised under the

Rehabilitation Act must be presented to the BOP through yet another procedure in

order to satisfy the exhaustion requirement of § 1997e(a).  *See* 28 C.F.R. § 39.170;

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1061-62 (9th Cir. 2007).  This

---

[14]     Even if the Court were to treat certain state-law tort claims as exhausted because the factual underpinnings of those claims were presented to the BOP, dismissal of Elliott's FTCA cause of action would still be required, because the amended complaint does specify or even hint at which state-law claims are being asserted.  Even given the liberal standards for interpreting pro se pleadings, neither defendants nor this Court are in a position to know whether Elliott has stated a claim upon which relief may be granted, either under state law or under the FTCA.  *See* 28 U.S.C. § 2680(h) (excluding certain intentional torts from the scope of the FTCA).

procedure requires that the prisoner first exhaust the usual BOP administrative

remedy process described above with respect to conditions-of-confinement claims

and, after that process has been completed, to submit a complaint to the Director for

Equal Employment Opportunity. *See* 28 C.F.R. § 39.170(d). Elliott has never

submitted a complaint to the Director of Equal Employment Opportunity. *See*

Raskin Decl. ¶ 3 [ECF No. 152]; Pl.'s Mem. in Opp'n, at 11. Although Elliott derides

this additional procedural requirement as "ridiculous," Pl.'s Mem. in Opp'n, at 11,

courts have repeatedly found that the Rehabilitation Act grievance procedure set forth

in § 39.170 is "available" to prisoners and therefore must be exhausted under

§ 1997e(a). *See, e.g.*, *Seina v. Center-Honolulu*, No. 16-51-LEK-KJM, 2016 WL 6775633,

at *5-6 (D. Haw. Nov. 15, 2016); *Collins v. LeMaster*, No. 5:15-5576, 2016 WL 675675,

at *10 (S.D. W.Va. Jan. 25, 2016); *Cardenas-Uriarte v. United States*, No. 14-cv-747-JPG-

PMF, 2015 WL 5161316, at *4 (S.D Ill. Sept. 1, 2015); *Zoukis v. Wilson*, No. 1:14cv-

1041-LMB-IDD, 2015 WL 4064682, at *10-11 (E.D. Va. July 2, 2015); *Brown v.

Cantrell*, No. 11-cv-200-PAB-MEH, 2012 WL 4050300, at *3 (D. Colo. Sept. 14,

2012); *Haley v. Haynes*, No. 210-cv-122, 2012 WL 112946, at *1 (S.D. Ga. Jan 12,

2012); *William G. v. Pataki*, No. 03-cv-8331-RCC, 2005 WL 1949509, at *5 (S.D.N.Y.

Aug. 12, 2005). Therefore, the mechanism for raising a claim provided in § 39.170

was available to Elliott, and he failed to exhaust that avenue for relief. His

Rehabilitation Act claim (Count Five) must therefore be dismissed without prejudice

under § 1997e(a).

### C.    Failure to State a Claim

Defendants argue that, to the extent Elliott has exhausted any of the claims found in the amended complaint, he has nevertheless failed to state any claim on which relief may be granted.  This Court has found that, for the most part, Elliott's claims are unexhausted and that administrative remedies were available for those claims.  However, as explored above, he has met the exhaustion requirements for claims raised in Administrative Remedy Series 807563.  Broadly speaking, this administrative remedy included two categories of claims:  (1) claims that the conditions of Elliott's confinement were unlawful, and (2) a claim that Elliott's removal from RDAP was arbitrary and capricious, and therefore prohibited, by the APA.

The factual allegations in the complaint need not be detailed in order to state a claim upon which relief may be granted, but they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

1.    **APA Claim**

In Count Six of the amended complaint, Elliott alleges that FCI-Sandstone

officials acted in an arbitrary and capricious manner, and therefore in violation of the

APA, by removing him from RDAP.   *See* 5 U.S.C. § 706(2)(a) (requiring a court to

"hold unlawful and set aside agency action, findings, and conclusions found to be . . .

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law.").   But adjudicative decisions by the BOP regarding specific inmates under

18 U.S.C. § 3621(e)(2), the statutory provision that authorizes RDAP, are specifically

exempted from the application of the APA.   *See* 18 U.S.C. § 3625 ("The provisions of

sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply

to the making of any determination, decision, or order under this subchapter.");

*Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (distinguishing between

rulemaking decisions by the BOP, which are not exempted from the APA, and

adjudicative decisions, which are exempted); *Reeb*, 636 F.3d at 1226-27.[15]   Elliott's

claim that his removal from RDAP was arbitrary and capricious in violation of the

---

[15]    Elliott cites *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005), in
support of his APA claim, but *Woodall* concerned the scope of the BOP's rulemaking
authority, which is not at issue here.   The other case cited by Elliott, *Sacora v. Thomas*,
648 F. Supp. 2d 1218, 1221-1222 (D. Or. Aug. 18, 2009), is of questionable validity
following *Reeb*, 636 F.3d at 1226-27, has been criticized within its own district, *see*
*Johnston v. Thomas*, No. 09-cv-1096-MO, 2010 WL 2574090, at *5 (D. Or. June 24,
2010), and is inconsistent with the Eighth Circuit's holding in *Martin* "that § 3625
precludes judicial review of agency adjudicative decisions," 133 F.3d at 1079, which
this Court must follow.

APA is precluded from judicial review by § 3625.  Count Six of the amended

complaint must therefore be dismissed.

### 2.    Conditions-of-Confinement Claims

Many of the claims exhausted by series 807563 challenge the conditions of

Mr. Elliott's confinement.  Whether the complaint states a claim as to each of his

allegations will be examined claim by claim.

### a.  First Amendment Retaliation—Removal from RDAP

The first claim raised by Elliott in Administrative Remedy Series 807563 is that

his removal from RDAP was motivated by his filing of grievances against prison staff

and therefore amounted to retaliation in violation of his First Amendment rights.  *See*

Pl. Ex 1 at 11-12.  This claim is raised in Count One of the amended complaint.  *See.*

Am. Compl. ¶ 87.  To establish a retaliation claim under the First Amendment, Elliott

must show that he was engaged in constitutionally protected activity, that the

defendants engaged in activity which caused an injury that would chill a person of

ordinary firmness from continuing in that activity, and that the adverse action was

motivated in part by Elliott's exercise of his constitutional rights.  *See Carroll v. Pfeffer*,

262 F.3d 847, 850 (8th Cir. 2001).

Elliott cannot plausibly allege that his removal from RDAP was motivated by

his filing of grievances at FCI-Sandstone because, by his own admission, he was

removed from RDAP *prior* to having filed any administrative remedies at FCI-

Sandstone.[16]  On Elliott's own allegations, his first administrative remedy filed at FCI-Sandstone was submitted on December 8, 2014, more than two weeks after his removal from the treatment program.  *See* Am. Compl. ¶ 38.[17]  The drug-treatment team simply could not have been motivated by Elliott's filing of grievances against them or other FCI-Sandstone officials when they decided to remove Elliott from RDAP.

Elliott also suggests that his removal from RDAP was motivated by his penchant for filing grievances generally, including at former institutions.  He cites statements made by Isaacson in the presence of the drug-treatment team on October 9, 2014, that Elliott was a "frequent filer" at the prisons where he had previously been incarcerated.  *See* Am. Compl. ¶ 87.  This claim, too, is implausible, because Elliott was admitted to RDAP *after* this statement was made by Isaacson.  *See* Am. Compl. ¶ 23.  The drug-treatment team need not have removed Elliott from RDAP to retaliate against him for grievance filing had they been so motivated; they

---

[16]  Although Elliott does not mention it, the documents submitted by defendants reflect that Elliott had pending at the time he arrived at FCI-Sandstone a "holdover" grievance from his previous institution regarding him not receiving certain publications through the mail.  *See* Bush Decl. Ex. C at 42-43.  There is no allegation from Elliott that FCI-Sandstone officials were motivated by this entirely unrelated (and reasonably benign) grievance.

[17]  Defendants submit documents showing that this administrative remedy was submitted on December 15, 2014.  *See* Bush Decl. Ex. C at 43.  Regardless of which date is correct, the administrative remedy was not submitted until weeks after Elliott had already been removed from RDAP.

could have simply not admitted him in the first place.  Moreover, a period of several weeks passed between the date on which Isaacson made the comments about Elliott being a frequent filer and Elliott's removal from RDAP, rendering Elliott's claim more implausible still.  *Cf. Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (finding a period of two weeks to be "sufficient, but barely so, to establish causation" for employment-retaliation claim).

Elliott also alleges in the amended complaint that, apart from his removal from RDAP, later decisions by FCI-Sandstone officials not to readmit him to the program were made in retaliation for his filing of grievances.  *See, e.g.*, Am. Compl. ¶ 57 (allegation that LaValley-Wood told Elliott that she had been listening to his phone calls and would not want to work with anyone that might sue her).  But this claim was not grieved by Elliott in Administrative Remedy Series 807563, which involved only Elliott's *removal* from RDAP and which was initiated prior to any decision regarding readmission had been made.  *See* Pl. Ex. 1 at 14-15.

In sum, although Elliott satisfied exhaustion requirements with respect to the claim that his removal from RDAP violated his first amendment rights, the claim he now raises is implausible.  That claim should therefore be dismissed.

### b.  Due Process—Removal from RDAP

Elliott next alleges that FCI-Sandstone staff violated his due-process rights by removing him from RDAP without adequate notice or procedures.  This claim encompassed grievances one, six, seven, and ten presented to the BOP in

38

Administrative Remedy Series 807563, *see* Pl. Ex. 1 at 12, and can be found in Count

Two of the amended complaint, *see* Am. Compl. ¶ 104.

The Fifth Amendment protects against the deprivation of liberty interests

without due process of law.  Federal prisoners have neither a protected liberty interest

in RDAP participation nor a protected liberty interest in early release upon

completion of RDAP.  *See Giannini v. Federal Bureau of Prisons*, 405 Fed. App'x 96, 97

(8th Cir. 2010) (per curiam); *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011);

*Reeb*, 636 F.3d at 1228 n.4; *Christian v. Willis*, No. 14-cv-4020, 2014 WL 3697991,

at *6-7 (D. S.D. July 24, 2014); *Campbell v. Fondren*, No. 09-736-MJD-AJB, 2009

WL 2982931, at *3 (D. Minn. Sept. 14, 2009).  Because Elliott cannot establish that he

was deprived of a protected liberty interest through removal from RDAP, his due-

process claim must fail.

### c.  Eighth Amendment

Claims two, three, five, and ten found in Administrative Remedy Series 807563

discuss what Elliott believed to be discriminatory treatment by officials at FCI-

Sandstone.  *See* Pl. Ex. 1 at 12.  These allegations are raised in the amended complaint,

as both Eighth Amendment violations (count three) and as violations of Elliott's

equal protection rights (count four), to be discussed below.

Although abuse of inmates by prison staff can implicate the Eighth

Amendment, Elliott does not assert that any member of the drug-treatment team

harassed him to an extent that would amount to a constitutional violation.[18]  *See, e.g.,* *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) (stating that "[g]enerally, mere verbal threats" do not amount to a constitutional violation).  The drug-treatment team is instead alleged to have turned a blind eye to harassment of Elliott by other prisoners—or, in some cases, of facilitating that harassment by placing prisoners with discriminatory views into informal positions of authority over Elliott.

Although Elliott's bullying at the hands of fellow prisoners was wrong, more is required to state a claim.  Even a direct threat of physical injury by a prison official does not necessarily rise to the level of an Eighth Amendment violation.  *See Hopson*, 961 F.2d at 1378-79.  The allegations raised in the relevant administrative grievance and repeated in the amended complaint are much less than direct threats of physical harm; the harassment was indirect and did not include threats of physical violence. Elliott has not stated a cognizable claim against the defendants under the Eighth Amendment.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. . . . [A]

---

[18]     Elliott did not allege in the administrative remedy that prison officials other than those in the drug-treatment team harassed him or discriminated against him on account of his sexuality.  *See* Pl. Ex. 1 at 12.  Any claims predicated on harassment by other defendants are therefore not properly before the Court.  *See* 42 U.S.C. § 1997e(a).

prison official's act or omission must result in the denial of the minimal civilized

measure of life's necessities . . . ." (quotation marks and internal citations omitted)).

### d.  Equal Protection

Elliott also alleges that his equal-protection rights were violated by various

actions of the drug-treatment team and Isaacson.  *See* Am. Compl. ¶¶ 25, 122.  "The

Equal Protection Clause generally requires the government to treat similarly situated

people alike."  *Klinger v. Dep't of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994).  As

relevant here, Elliott must show that "'similarly situated classes of inmates [were]

treated differently, and that this difference in treatment bears no rational relation to

any legitimate penal interest.'"  *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003)

(quoting *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998)).  Elliott "also must

show intentional or purposeful discrimination."  *Id.* (citing *Klinger*, 31 F.3d at 733).

For the most part, Elliott's equal-protection claims fail because he cannot show

that he was similarly situated to the prisoners to whom he hopes to compare himself.

For example, Elliott complains that he was punished for possession of non-drug

contraband while other inmates were not punished for admitting to drug or alcohol

use during treatment sessions.  (Am. Compl. ¶ 122)  However, the differences in

setting alone between a contraband violation and a treatment group render Elliott and

the other prisoners not similarly situated.

One particular equal-protection claim raised by Elliott suffices to state a claim

upon which relief may be granted.  Elliott alleges that, on October 30, 2014, Isaacson,

Dahl, Denzke, Gagnon, Greenfield, and Krzoska, acting at the behest of Maynard,[19]

searched his cell and uncovered photographs of homosexual conduct that were

deemed pornographic contraband.  *See* Am. Compl. ¶¶ 25, 122.  Those defendants

then "gave him an incident report" for possession of the contraband.  *Id.*  Two

months later, those defendants participated in or otherwise were involved with a

search of another inmate that uncovered "a larger quantity of more revealing photos

of a heterosexual nature."  *Id.*  Nevertheless, the defendants identified above "did not

give [the other prisoner] an incident report."  *Id.*  This claim was presented to the

BOP in Administrative Remedy Series 807563.  *See* Pl. Ex. 1 at 12 (citing Ex. X [ECF

No. 115]).  Although the incident report was eventually expunged, Elliott was, for a

time, subjected to additional restrictions on account of the report.

Read liberally, and drawing all reasonable inferences in favor of Elliott, *see*

*Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014), the amended

complaint alleges that the defendants subjected Elliott to discipline that another

similarly situated heterosexual prisoner did not receive for a similar (or worse)

infraction, and that this difference was motivated by purposeful discrimination against

---

[19]    Elliott pleads broadly that various supervisory officials at FCI-Sandstone were
responsible for each of the alleged constitutional infractions in the amended
complaint, but no one other than the individuals identified above is adequately alleged
to have been involved in the events giving rise to this equal-protection claim.

Elliott.[20]  Defendants may produce evidence on summary judgment or at trial

undermining this claim.  As a matter of pleading, however, Elliott has established a

violation of his equal-protection rights.[21]

Although Elliott has adequately alleged the basis for an equal-protection claim,

the PLRA limits the scope of relief available to him.  Under 42 U.S.C. § 1997e(e),

"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or

other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical injury or the commission of a sexual act . . . ."

Section 1997e(e) limits "recovery for mental or emotional injury in all federal actions

brought by prisoners."  *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).  Elliott

does not allege that he suffered any physical injury due to the disparate disciplinary

---

[20]    Defendants argue that Elliott failed to plead that any of the defendants at issue had knowledge of the heterosexual pictures possessed by the other inmate or that, if they did have this knowledge, they declined to pursue discipline against that inmate. But Elliott *does* allege that "the same staff members" who found homosexual photographs in his cell were involved in the search that uncovered the other inmate's homosexual photographs, and that those defendants "did not give [the other inmate] an incident report."  Am. Compl. ¶ 122.

[21]    Defendants also move to dismiss the complaint on the basis that they are entitled to qualified immunity on each of the claims raised by Elliott.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  But defendants do not offer any specific qualified-immunity analysis with respect to this equal-protection claim, and the principles upon which Elliott's equal-protection claim are founded were well established at the time defendants undertook the actions alleged in the amended complaint.  *See Phillips*, 320 F.3d at 848; *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990).

treatment.  Under § 1997e(e), then, Elliott may seek only "nominal damages, punitive

damages, injunctive relief and a declaratory judgment." *Id.*  Any claim for injunctive

relief would be moot, as the incident report at issue was expunged and Elliott has

since been transferred to a different institution.  Therefore, the only remedies

available to Elliott are nominal damages, a declaratory judgment that his constitutional

rights had been violated, and — only if Elliott can establish that defendants' conduct

was "motivated by evil motive or intent, or . . . involve[d] reckless or callous

indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56

(1983) — punitive damages.

### e. Access to Counsel and the Courts

Elliott alleges that members of the drug-treatment team questioned him about

the credentials of his attorney and the purpose behind a scheduled legal visit in

violation of BOP policy, his Sixth Amendment right to counsel, and his First

Amendment right of access to the courts.  This claim encompasses grievance four

presented to the BOP in Administrative Remedy Series 807563, *see* Pl. Ex. 1 at 12, and

was pleaded in Count Two of the amended complaint, *see* Am. Compl. ¶ 104.[22]  "To

prove a violation of the right of meaningful access to the courts, a prisoner must

---

[22]    The amended complaint also alleges that drug-treatment team members
"denied Plaintiff's request for legal phone calls," Am. Compl. ¶ 104, but this claim
does not appear in Elliott's administrative remedy and is therefore not exhausted, *see*
Pl. Ex. 1 at 11-12.

establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautsky*, 494 F.3d 677, 680 (8th Cir. 2007).  Not only has Elliott failed to allege that this questioning prevented him from pursuing a non-frivolous legal claim, but Elliott has failed to allege that he was ever *actually* impeded by the drug-treatment team from communicating with his attorney prior to his filing of Administrative Remedy Series 807563.  *See also* Am. Compl. ¶ 15 (allegation by Elliott that he emailed his attorney about concerns at FCI-Sandstone).  Moreover, he did not establish a Sixth Amendment violation because these protections only apply to the rights of the accused in a criminal case, not in prison disciplinary proceedings or civil litigation.  *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 314-15 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 576 (1974).  And allegations that prison staff have violated internal policies do not, by themselves, establish a claim of constitutional dimension. *See, e.g., Bornstein v. Monmouth County Sheriff's Office*, 658 Fed. App'x 663, 668 (3d Cir. 2016) ("[T]he issue is not whether [defendants] violated internal prison policies but whether they violated the Constitution.").  Without an allegation of actual injury prohibited by the constitution, Elliott cannot proceed on his claim.

### f.  Deliberate Indifference to Medical Needs

Finally, Elliott alleged in the administrative remedy that the medical staff at FCI-Sandstone was deliberately indifferent to his medical needs by "remov[ing] my

prescription" for anxiety medication.  Pl. Ex. 1 at 12.  Elliott has not specifically

pleaded this removal of a prescription as a basis for any of his myriad constitutional

claims.[23]  *See generally* Am. Compl. ¶¶ 83-145.  Moreover, Elliott does not allege who,

specifically, removed this prescription.  *See* Am. Compl. ¶ 16 (alleging that the

prescription was "removed by the medical doctor"); Pl. Ex. 1 at 12 (alleging that the

prescription was removed by "the Medical staff"); *Irish v. U.S. Dep't of Justice*, No. 11-

cv-2703-MJD-JJK, 2011 WL 6968483, at *2 (D. Minn. Nov. 10, 2011) (noting that "in

order to state an actionable *Bivens* civil rights claim, a complaint must set forth specific

factual allegations showing what each named defendant *personally* did, or failed to do,

that purportedly violated the plaintiff's federal constitutional rights.").

Even if the pleading had more clarity regarding who removed the prescription,

when, and in violation of which right, Elliott has not alleged facts showing a

deliberate indifference to his medical needs through the removal of this prescription.

Whether a prison official was deliberately indifferent to an inmate's medical needs

"requires both an objective and a subjective analysis."  *Jackson v. Buckman*, 756

F.3d 1060, 1065 (8th Cir. 2014).  Under the subjective prong of this analysis, Elliott

must show that a prison official "'actually knew of but deliberately disregarded his

---

[23]    Elliott does raise a claim that his Eighth Amendment rights were violated when
Weber and Earl confiscated his medicine on March 27, 2015, *see* Am. Compl. ¶ 111,
but this is not the issue that was presented to the BOP in Administrative Remedy
Series 807563.

serious medical need.'" *Id.* (quoting *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014)).

"The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandall*, 56 F.3d 35, 37 (8th Cir. 1995).

A purposeful decision by medical professionals to change or remove a medication prescribed to a patient, as alleged by Elliott, may amount to a mistake or even negligence, but it does not by itself reflect a deliberate disregard for Elliott's medical needs.  And Elliott has not adequately pled any facts which could rise to the level of stating a claim in this arena.  Elliott's deliberate-indifference claim should be dismissed.

## III.   Conclusion

Most of the claims Elliott brought against defendants in their official capacities are barred by sovereign immunity or have become moot and must be dismissed without prejudice for lack of jurisdiction on that basis.  Elliott has failed to exhaust available administrative remedies with respect to the vast majority of the remaining claims, and those claims should be dismissed without prejudice as well.  Of the few claims over which the Court has jurisdiction and for which Elliott either exhausted administrative remedies or such remedies were not available to him, the only viable claim for relief pleaded by Elliott is the claim that his equal-protection rights were violated after he was discovered in possession of photographs with homosexual content and disciplined, while a similarly situated prisoner in possession of

photographs with comparable heterosexual content was not disciplined.  Accordingly, it is hereby recommended that Elliott's amended complaint be dismissed in its entirety, except for the equal-protection claim just identified.

## Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that defendants' motion to dismiss or, in the alternative, for summary judgment [ECF No. 150] be **GRANTED IN PART and DENIED IN PART** as follows:

1. The motion be **DENIED** with respect to the claim that defendants Dr. Kari Maynard, John Isaacson, Dixie Dahl, Steve Denzine, Rykki Gignon, Terry Greenfield, and Keith Krzoska violated plaintiff Benjamin Elliott's equal-protection rights by subjecting him to discipline for possession of photographs with homosexual content discovered on October 30, 2014.

2. The motion be **GRANTED** in all other respects, as follows:

   a. That Elliott's official-capacity claims be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction, except insofar as he seeks injunctive relief in the form of readmission to the RDAP or a reduction in sentence.

   b. That the remaining claims not presented in Administrative Remedy Series 806239 or 807563 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available administrative remedies.

   c. That all remaining claims, with the exception of the equal-protection claim described above, be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief may be granted.

3. The following defendants be **DISMISSED** from this action: Denese Wilson, Matthew Marske, Tony Lee, William Earl, Michael Weber, Mark Bruns, Dr. Ann LaValley-Wood, Joe Jarvis, Steven Dracy, Cathy Thompson, Nicole Fedo, and Deborah Jensen.

Date:  January 17, 2017                          *s/ Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge


# NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.